# United States Court of Appeals for the Federal Circuit

05-1389
(Serial No. 75/602,873)

IN RE JOANNE SLOKEVAGE

Anthony L. Fletcher, Fish & Richardson P.C., of New York, New York, argued for appellant.

Cynthia C. Lynch, Associate Solicitor, Office of the Solicitor, United States Patent and Trademark Office, of Arlington, Virginia, argued for the Director of the Patent and Trademark Office. With her on the brief were John M. Whealan, Solicitor, and Nancy C. Slutter, Associate Solicitor.

Appealed from: United States Patent and Trademark Office, Trademark Trial and Appeal Board

# United States Court of Appeals for the Federal Circuit

05-1389
(Serial No. 75/602,873)


IN RE JOANNE SLOKEVAGE


_____

DECIDED:  March 21, 2006
_____

Before LOURIE, GAJARSA, and LINN, Circuit Judges

LOURIE, Circuit Judge.

## DECISION

Joanne Slokevage ("Slokevage") appeals from the decision of the United States Patent and Trademark Office, Trademark Trial and Appeal Board ("Board") sustaining the refusal of the examiner to register her trade dress mark for clothing.  In re Joanne Slokevage, Serial No. 75602873 (TTAB Nov. 10, 2004) ("Final Decision").  Because the Board's finding that Slokevage's trade dress was product design and thus could not be inherently distinctive, and that the trade dress was not unitary are supported by substantial evidence, we affirm.

## BACKGROUND

Slokevage filed an application to register a mark on the Principal Register for "pants, overalls, shorts, culottes, dresses, skirts."  Slokevage described the mark in her application as a "configuration" that consists of a label with the words "FLASH DARE!" in a V-shaped background, and cut-out areas located on each side of the label.  The cut-out areas consist of a hole in a garment and a flap

attached to the garment with a closure device. This trade dress configuration, which is located on the rear of various garments, is depicted below:



Although Slokevage currently seeks to register a mark for the overall configuration of her design, she has already received protection for various aspects of the trade dress configuration. For example, she received a design patent for the cut-out area design. She also registered on the Supplemental Register[1] a design mark for the cut-out area. In addition, she registered the word mark "FLASH DARE!" on the Principal Register.

The trademark examiner initially refused registration of the proposed mark on the ground that it constituted a clothing configuration that is not inherently distinctive. The examiner afforded Slokevage the opportunity to submit evidence of acquired distinctiveness or to disclaim the design elements of the configuration, but Slokevage chose not to submit evidence of acquired distinctiveness or to disclaim the design elements. Rather, she argued that the trade dress was inherently distinctive. The examiner, relying on section 2(f) of

---

[1] Pursuant to section 23 of the Lanham Act, the United States Patent and Trademark Office ("PTO") maintains a Supplemental Register for marks "capable of distinguishing applicant's goods or services and not registrable on the principal register." 15 U.S.C. § 1091(a).

the Trademark Act, 15 U.S.C. § 1052(f), made final his refusal to register the mark on the ground that the clothing configuration constitutes "product design/configuration," and pursuant to the decision of the U.S. Supreme Court in Wal-Mart Stores, Inc. v. Samara Brothers, Inc., 529 U.S. 205 (2000), "product design" cannot be inherently distinctive. The examiner noted that Slokevage's reference in her application to the trade dress as a "cut-away flap design" supported a determination that the configuration constitutes product design. Finally the examiner found that the configuration is not "unitary," for purposes of avoiding a disclaimer requirement.

Slokevage appealed the refusal of the examiner to register the trade dress configuration, and the Board affirmed the examiner's decision. The Board found that the cut-out areas, consisting of the holes and flaps, constituted product design. Relying on Wal-Mart, the Board observed that a product design "will not be regarded as a source indicator at the time of its introduction." According to the Board, Slokevage's trade dress, as product design, could not be inherently distinctive, and therefore could not be registered absent a showing of acquired distinctiveness.

The Board also determined that the trade dress configuration was not unitary and Slokevage therefore could not avoid the examiner's disclaimer requirement. According to the Board, "various elements [of the trade dress] are not so merged together that they cannot be divided and treated as separable elements." The Board noted that Slokevage previously registered the words "FLASH DARE!" on the Principal Register. Because portions of the trade dress

were registered separately, the Board found that that fact supported a determination that the elements of the configuration were not unitary. The Board offered to set aside its decision in accordance with 37 C.F.R § 2.142(g) if Slokevage disclaimed the unregistrable holes and flaps portion of the configuration. Slokevage declined to do so and subsequently filed a request for reconsideration. The Board denied the request, determining that the request amounted to a reargument of the same points made during prosecution before the examiner.

Slokevage timely appealed, and we have jurisdiction pursuant to 28 U.S.C. § 1295(a)(4)(B).

## DISCUSSION

We apply a limited standard of review to Board decisions, reviewing legal determinations de novo and factual findings for substantial evidence. In re Pacer Tech., 338 F.3d 1348, 1349 (Fed. Cir. 2003). "Substantial evidence requires the reviewing court to ask whether a reasonable person might find that the evidentiary record supports the agency's conclusion." On-Line Careline, Inc. v. Am. Online, Inc., 229 F.3d 1080, 1085 (Fed. Cir. 2000).

As a preliminary matter, Slokevage argues that whether trade dress is product design or not is a legal determination, whereas the government asserts that it is a factual issue. The resolution of that question is an issue of first impression for this court. We conclude that the determination whether trade dress is product design is a factual finding because it is akin to determining whether a trademark is inherently distinctive or whether a mark is descriptive,

which are questions of fact. <u>See, e.g.</u>, <u>Hoover Co. v. Royal Appliance Mfg. Co.</u>, 238 F.3d 1357, 1359 (Fed. Cir. 2001) ("The issue of inherent distinctiveness is a factual determination made by the board"); <u>see also</u> <u>In re Nett Designs, Inc.</u>, 236 F.3d 1339, 1341 (Fed. Cir. 2001) ("Placement of a term on the fanciful-suggestive-descriptive-generic continuum is a question of fact"). Inherent distinctiveness or descriptiveness involves consumer perception and whether consumers are predisposed towards equating a symbol with a source. <u>See</u> <u>In re MBNA Am. Bank, N.A.</u>, 340 F.3d 1328, 1332 (Fed. Cir. 2003); <u>In re Nett Designs, Inc.</u>, 236 F.3d at 1341-42. Such issues are determined based on testimony, surveys, and other evidence as questions of fact. Determining whether trade dress is product design or product packaging involves a similar inquiry. <u>Wal-Mart</u>, 529 U.S. at 213 (discussing product packaging and design in the context of consumers ability to equate the product with the source). We therefore will defer to the Board's finding on product design, affirming the Board if its decision is supported by substantial evidence. In addition, the inquiry into whether a mark is unitary is a factual determination. <u>See</u> <u>Dena Corp. v. Belvedere Int'l Inc.</u>, 950 F.2d 1555, 1561 (Fed. Cir. 1991) ("test for unitariness requires the Board to determine 'how the average purchaser would encounter the mark under normal marketing of such goods'") (citations omitted).

    I.    <u>Trade Dress and Product Design</u>

On appeal, Slokevage argues that the Board erred in determining that the trade dress[2] for which she seeks protection is product design and thus that it cannot be inherently distinctive. She asserts that the Board's reliance on the Supreme Court's decision in Wal-Mart to support its position that Slokevage's trade dress is product design is misplaced. In particular, she contends that Wal-Mart does not provide guidance on how to determine whether trade dress is product design. Moreover, she maintains that the trade dress at issue in Wal-Mart, which was classified as product design without explanation, is different from Slokevage's trade dress because the Wal-Mart trade dress implicated the overall appearance of the product and was a theme made up of many unique elements. Slokevage argues that her trade dress, in contrast, involves one component of a product design, which can be used with a variety of types of clothing. Slokevage further asserts that her trade dress is located on the rear hips of garments, which is a location that consumers frequently recognize as identifying the source of the garment.

The PTO responds that the Board correctly concluded that Slokevage's trade dress is product design and that it properly relied on Wal-Mart for support of its determination. According to the PTO, in the Wal-Mart decision the Supreme Court determined that a design of clothing is product design. The PTO further asserts that the trade dress at issue in Wal-Mart, which was classified as product design, is similar to Slokevage's trade dress. The trade dress in Wal-

---

[2] Slokevage admits that the configuration she is seeking to protect is "trade dress" and thus we will accept for purposes of this appeal that the configuration is "trade dress."

Mart consists of design elements on a line of garments, and Slokevage's trade dress similarly consists of a design component common to the overall design of a variety of garments. The PTO notes that Slokevage's trade dress application refers to her trade dress as a "configuration" including a "clothing feature," and that "product configuration" is synonymous with "product design." The PTO also argues that under Wal-Mart product design cannot be inherently distinctive, the rationale being that consumers perceive product design as making the product more useful or desirable, rather than indicating source. According to the PTO, the trade dress at issue here makes the product more desirable to consumers, rather than indicates source. Finally, the PTO notes that even if it were a close case as to whether Slokevage's trade dress constitutes product design, the Court's opinion in Wal-Mart states that in "close cases," trade dress should be categorized as product design, thereby requiring proof of acquired distinctiveness for protection. 529 U.S. at 215.

We agree with the Board that Slokevage's trade dress constitutes product design and therefore cannot be inherently distinctive. The Lanham Act provides protection not only for words and symbols, but also for "trade dress," a category of trademarks that has been described as involving the "total image of a product," including "features such as size, shape, color or color combinations, texture, graphics, or even particular sales techniques." Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 764 n. 1 (1992). The Supreme Court has recently observed that trade dress is a category that originally included only the packaging of a product, but has been expanded by courts to encompass the design of a product.

Wal-Mart, 529 U.S. at 209. In order for an applicant to gain protection for trade dress, the trade dress must be distinctive, either inherently or by acquiring distinctiveness. Two-Pesos, 505 U.S. at 769. Trade dress is inherently distinctive when its "intrinsic nature serves to identify a particular source of a product," and, in contrast, acquires distinctiveness when the public comes to associate the product with its source. Id. at 768-769. The Supreme Court has determined that certain types of trade dress, in particular, product design and color, can never be inherently distinctive. See Qualitex Co. v. Jacobson Prods. Co., 514 U.S. 159, 162 (1995) (color can never be inherently distinctive); Wal-Mart, 529 U.S. at 212 (product design is not inherently distinctive).

Directly relevant to our discussion of product design is the Court's discussion in Wal-Mart. That case addressed whether product design could ever be inherently distinctive and answered the question in the negative. The trade dress in Wal-Mart involved children's clothing decorated with "hearts, flowers, fruits, and the like." 529 U.S. at 207. The Court labeled that trade dress product design and ultimately concluded that product design is entitled to protection only if it has acquired distinctiveness. Id. at 216. The Court reasoned that "in the case of product design . . . we think consumer predisposition to equate the feature with the source does not exist" and stated that "even the most unusual of product designs—such as a cocktail shaker shaped like a penguin—is intended not to identify the source, but to render the product itself more useful or more appealing." Id. at 213. Thus, the Court established a bright-line rule—product design cannot be inherently distinctive, and always requires proof of acquired

distinctiveness to be protected.  The Court did not recite the factors that distinguish between product packaging and product design trade dress, but stated that in "close cases" courts should classify the trade dress as product design.  Id. at 215.

Both parties agree that if we determine that the trade dress at issue is product design, then it cannot be inherently distinctive under the decision in Wal-Mart.  The issue pertinent to this appeal, however, is whether Slokevage's proposed trade dress is product design.  Although the decision in Wal-Mart does not expressly address the issue of what constitutes product design, it is informative to this case because it provides examples of trade dress that are product design.  The Court observed that a "cocktail shaker shaped like a penguin" is product design and that the trade dress at issue in that case, "a line of spring/summer one-piece seersucker outfits decorated with appliques of hearts, flowers, fruits, and the like" is product design.  Wal-Mart, 529 U.S. at 207, 213.  These examples demonstrate that product design can consist of design features incorporated into a product.  Slokevage urges that her trade dress is not product design because it does not alter the entire product but is more akin to a label being placed on a garment.  We do not agree.  The holes and flaps portion are part of the design of the clothing—the cut-out area is not merely a design placed on top of a garment, but is a design incorporated into the garment itself. Moreover, while Slokevage urges that product design trade dress must implicate the entire product, we do not find support for that proposition.  Just as the product design in Wal-Mart consisted of certain design features featured on

clothing, Slokevage's trade dress similarly consists of design features, holes and flaps, featured in clothing, revealing the similarity between the two types of design.

In addition, the reasoning behind the Supreme Court's determination that product design cannot be inherently distinctive is also instructive to our case. The Court reasoned that, unlike a trademark whose "predominant function" remains source identification, product design often serves other functions, such as rendering the "product itself more useful or more appealing." Wal-Mart, 529 U.S. at 212, 213. The design at issue here can serve such utilitarian and aesthetic functions. For example, consumers may purchase Slokevage's clothing for the utilitarian purpose of wearing a garment or because they find the appearance of the garment particularly desirable. Consistent with the Supreme Court's analysis in Wal-Mart, in such cases when the purchase implicates a utilitarian or aesthetic purpose, rather than a source-identifying function, it is appropriate to require proof of acquired distinctiveness.

Finally, the Court in Wal-Mart provided guidance on how to address trade dress cases that may be difficult to classify: "To the extent that there are close cases, we believe that courts should err on the side of caution and classify ambiguous trade dress as product design, thereby requiring secondary meaning." 529 U.S. at 215. Even if this were a close case, therefore, we must follow that precedent and classify the trade dress as product design. We thus agree with the Board that Slokevage's trade dress is product design and

therefore that she must prove acquired distinctiveness in order for her trade dress mark to be registered.

II.    Unitary Mark

Under 15 U.S.C. § 1056(a), "[t]he Director may require the applicant to disclaim an unregistrable component of a mark otherwise registrable." The disclaimer requirement "provides the benefits of the Lanham Act to applicants for composite marks with unregistrable components" and, at the same time, "prevents an applicant from claiming exclusive rights to disclaimed portions apart from composite marks." Dena Corp., 950 F.2d at 1560. If a mark is unitary, meaning that it has no "unregistrable components" and is an "inseparable whole," it is exempted from the disclaimer requirement because "it does not fit within the language of 15 U.S.C. § 1056(a)." Id. A unitary mark creates a "single and distinct commercial impression." Id. at 1561.

On appeal, Slokevage argues that her trade dress mark is unitary because its elements are inseparable and therefore that the examiner should not have required a disclaimer. She contends that the Board erred by relying solely on evidence that Slokevage separately registered the words of the trade dress to determine that the trade dress is not unitary. She further asserts that the elements of the trade dress mark are not capable of being separated and are closely connected in physical proximity to each other. The PTO responds that the mark is not unitary, and is separable, as shown by the separate registration of the word mark and the design element.

We agree with the PTO that substantial evidence supports the Board's finding that the mark is not unitary. The display of elements in the drawing of the trade dress, the applicant's earlier registration of the words "FLASH DARE!," and the applicant's design patent on the cut-out area are evidence that Slokevage's trade dress is not unitary. Moreover, trade dress, by its nature, contains distinct elements and is characterized as the combination of various elements to create an overall impression. While in some cases the elements may be so combined as to be inseparable, that is not the case here, as shown by the separate locations of the words and design elements and the separate registration of the elements.

## CONCLUSION

Because substantial evidence supports the Board's determinations that Slokevage's trade dress is product design and is not unitary, the decision of the Board is affirmed.

## AFFIRMED